**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 0:20-cv-60347-RS – Smith**

KEITH HOBBS, individually and on behalf of
all others similarly situated,

      Plaintiff,

      v.

USHEALTH ADVISORS, LLC, FRANK
GORDON OWEN, AND DOES 1 through 10,

      Defendant(s).
_____/

**CLASS ACTION**

**USHEALTH ADVISORS, LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT, OR, ALTERNATIVELY, TO STAY PROCEEDINGS,
AND INCORPORATED MEMORANDUM OF LAW**

Defendant USHEALTH Advisors, LLC ("USHA"), pursuant to Rules 12(b)(2), 12(b)(3), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure, moves this Court to dismiss this action for lack of personal jurisdiction, for improper venue, and for Plaintiff Keith Hobbs' ("Plaintiff") failure to state a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et al*. ("TCPA").  Alternatively, USHA moves this Court to strike immaterial allegations and to stay proceedings in this action pending the decision of the United States Supreme Court in *Barr v. American Association of Political Consultants*, No. 19-631.

## PRELIMINARY STATEMENT

In his Amended Class Action Complaint (ECF 9) ("FAC"), serial TCPA litigant Keith Hobbs alleges that he is a resident of Columbus, Georgia, (FAC ¶ 4) and contends that Defendant violated §§ 227(b) and (c) of the TCPA.  *See, e.g.,* FAC ¶¶ 39, 47.  But Plaintiff does not adequately connect the alleged violative conduct to USHA or the State of Florida.  Further Plaintiff does not allege that this Court is the proper venue for the action.

First, Plaintiff alleges in conclusory fashion that USHA, a Texas limited liability company with its principal place of business in Fort Worth, Texas is subject to personal jurisdiction in the Court.  Second, Plaintiff alleges no facts to support his conclusory allegation that USHA used an automated telephone dialing system ("ATDS") in violation of § 227(b)(1)(A).  Third, Plaintiff attempts to allege, but falls woefully short of alleging, a claim for vicarious liability.  Fourth, Plaintiff admits that venue is improper in this Court by alleging that venue is instead proper in the Middle District of Florida.

If the Court does not dismiss the FAC, it should stay the proceedings.  Following a recent decision to grant *certiorari*, the United States Supreme Court is poised in approximately the next few months to determine whether the TCPA, and in particular at least one of the provisions under which this lawsuit has been brought, remains valid law or, if the Supreme Court agrees with the Fourth Circuit's ruling that § 227(b)(1)(A)'s exemption for calls that relate solely to efforts to collect a debt owed to or guaranteed by the United States violates the Free Speech Clause of the First Amendment to the United States Constitution and is therefore unconstitutional, whether the entire provision is invalidated in full.  *See Barr v. American Ass'n of Political Consultants*, No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020) ("*AAPC*"); *See Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 166-68, 171 (4th Cir. 2019).  Defendant intends to assert that First Amendment defense in any Answer filed.

Respondents in *AAPC* expressly sought review of the severability ruling, and contend, as USHA will contend here, that the underlying restrictions on speech and the use of an ATDS in § 227(b)(1)(A) should be invalidated as unconstitutional. *See Barr v. American Ass'n of Political Consultants*, No. 19-631, 2019 WL 6609436, *2 (U.S. Dec. 4, 2019) (Brief for Respondents in Support of *Certiorari*). Oral argument in *AAPC* was held on May 6, 2020, and the Supreme Court is expected to rule by the end of this Term. That ruling may, as respondents in the appeal seek, invalidate the statute that is the source of Plaintiff's claims. Under these circumstances, the interests of judicial economy and the public welfare as well as the lack of any prejudice to Plaintiff weigh heavily in favor of staying the proceedings in this action pending the outcome of *AAPC*. Just recently, a court in the Middle District of Florida, where Plaintiff apparently wants this action transferred, stayed a similar TCPA case pending a ruling from the Supreme Court in *AAPC*. *See Wright et al. v EXP Realty, LLC*, Case. No 6:18-cv-1851-Orl-40EJK, ECF 99 (Feb. 7, 2020) (attached as Exhibit A).

## ARGUMENT

### I. STANDARD OF REVIEW

#### a. 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the initial burden of "alleg[ing] sufficient facts to make out a prima facie case of jurisdiction" over the nonresident defendant. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir.1999) (per curiam). If the plaintiff sufficiently alleges a prima facie case of jurisdiction, the defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir.2009) (per curiam) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir.1996)). "If the defendant does so, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.' " *Id.* (quoting *Sculptchair*, 94 F.3d at 627). The court must accept the facts alleged in the complaint as true to the extent they are uncontroverted by the defendant's affidavits. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990). Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. *1367 *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir.2006).

b. **12(b)(6)**

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citation omitted).

c. **12(b)(3)**

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to file a motion to dismiss for improper venue. In considering a motion to dismiss for improper venue, the district court must take the facts of a complaint as true only insofar as "they are uncontroverted by defendant['s] affidavits." *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012), *superseded on other grounds as recognized by Caron v. NCL (Bahamas) Ltd.*, 910 F.3d 1359 (11th Cir. 2018) (internal quotation marks and citation omitted. If a case is filed in the improper venue, the court must either dismiss the action or transfer it to a jurisdiction with proper venue. *See* 28 U.S.C. § 1406(a). "[T]he decision whether to transfer a case is left to the sound discretion of the district court...." *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982) (citations omitted).

d. **12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike serve to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Vision Power, LLC v.*

*Midnight Express Power Boats, Inc.*, No. 18-61700, 2019 WL 5291042, at *7 (S.D. Fla. July 26, 2019) (citations omitted).

### e. Stay of Proceedings

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). Consequently, a district court may "stay a case pending the resolution of related proceedings in another forum." *Suncoast Waterkeeper v. City of St. Petersburg*, No. 8:16-CV-3319-T-27AEP, 2018 WL 8369385, *1 (M.D. Fla. Jan. 22, 2018) (citing *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000)). Where "a federal appellate decision . . . is likely to have a substantial or controlling effect on the claims and issues," a stay may be warranted. *Tel. Sci. Corp. v. Hilton Grand Vacations Co., LLC*, No. 6:15-CV-969-ORL-41DAB, 2015 WL 7444409, *3 (M.D. Fla. Nov. 20, 2015) (quoting *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009)). Such stays are routinely issued when a pending Supreme Court ruling may be dispositive or significantly affect the case being stayed.[1]

In determining whether to grant a stay, "courts examine general factors such as whether a stay will unduly prejudice or tactically disadvantage the non-moving party; simplify the issues and streamline trial; and reduce the burden of litigation on the parties and on the court." *Omnipol, a.S. v. Multinational Def. Servs., LCC*, No. 8:19-CV-794-T-33TGW, 2019 WL 4891398, *1 (M.D. Fla. June 3, 2019). *See also*, *e.g.*, *Incarcerated Entm't, LLC. v. Cox*, No. 18-21991-CIV, 2018 WL 5807650, *2 (S.D. Fla. Nov. 6, 2018); *Kennedy v. Del Viso, LLC*, No. 15-80699-CIV, 2015 WL 13554981, *1 (S.D. Fla. Sept. 11, 2015). The proponent of a stay has the

---

[1] *See*, *e.g.*, *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1247 (11th Cir. 2011); *Assoc. for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 956 (11th Cir. 2005); *Saleh v. Me Bath Spa Experience, LLC*, No. 17-CV-62322, 2018 WL 398325, *4 (S.D. Fla. Jan. 12, 2018); *Ricks v. Allied Interstate, LLC*, No. 3:16-CV-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Shahin v. Synchrony Fin., et al.*, No. 8:15-cv-02941-MSS-EAJ, 2016 WL 4502461 (M.D. Fla. Apr. 12, 2016); *Luster v. Sterling Jewelers*, No. 1:15–cv–2854, 2015 WL 9255553, *3 (N.D. Ga. Dec. 17, 2015); *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465, 2015 WL 11983233 (M.D. Fla. Nov. 10, 2015); *Colby v. Publix Super Mkts., Inc.*, No. 2:11-CV-590-RDP, 2012 WL 2357745, *2-3 (N.D. Ala. 2012); *Bainbridge v. Tuter*, No. 8:99-CV-2681-T-27TBM, 2004 WL 5579425, *1 (M.D. Fla. Sept. 24, 2004); *Held v. Davis*, 778 F. Supp. 527, 528 (S.D. Fla. 1991); *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1557 (M.D. Fla. 1987); *Sigvartsen v. Smith Barney Harris Upham & Co.*, No. 84-540-CIV-T-15, 1985 WL 8033, *1 (M.D. Fla. May 31, 1985).

burden of proving the requested stay is justified. *See Clinton v. Jones,* 520 U.S. 681, 708 (1997).

Courts have "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1269 (11th Cir.2001). "In the class-action context, the Court may, in the interests of fairness and efficiency, order discovery on issues of class certification while postponing class-wide discovery on the merits." *Physicians Healthsource, Inc. v. Anda, Inc.*, No. 12-60798-CIV, 2012 WL 7856269, at *1 (S.D. Fla. Nov. 27, 2012) (citing *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570–71 (11th Cir.1992)). "The drafters of the Federal Rules of Civil Procedure similarly recognized that certification of a class may be delayed in order to conduct discovery on and dispose of a purported class representative's individual claims." *Id.* (citing Fed.R.Civ.P. 23 advisory committee's note (2003) ("The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.")).

## II. USHA IS NOT SUBJECT TO GENERAL PERSONAL JURISDICTION IN THIS COURT

General personal jurisdiction exists if a defendant's contacts arise from continuous, systematic, and substantial presence in the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 415 (1984). The Supreme Court has clarified that to establish general personal jurisdiction over a corporate entity such as USHA, its "affiliations with the State [must be] so 'continuous and systematic' as to render [it] essentially at home in the forum State,'" akin to the "paradigm bases for general jurisdiction" of a corporation's place of incorporation or principal place of business. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2013) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

Plaintiff does not allege that USHA is subject to general jurisdiction in Florida. That makes sense, as USHA is a Texas limited liability company with its principal place of business in Texas. *See* Declaration of Dean Whaley at ¶ 3 (attached as Exhibit B). Nothing else in the FAC suggests USHA has the continuous and systematic contacts required for general personal jurisdiction, nor could it. USHA was organized under the laws of the State of Texas and its principal place of business is Fort Worth, Texas. As made clear in the accompanying Declaration of Dean Whaley, USHA lacks the continuous and systematic jurisdictional contacts

5

with the State of Florida to render it "essentially at home" there.  Ex. B at ¶¶ 3-9.  Accordingly, there is no basis for the Court to find a *prima facie* showing of general jurisdiction over USHA.

### III. NOR IS THERE SPECIFIC PERSONAL JURISDICTION OVER USHA

Specific jurisdiction over USHA is also lacking.  Specific jurisdiction requires that a defendant purposefully directed its activities at the State of Florida, and that a plaintiff's claimed injury arose from those same activities.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State."  *Burger King*, 471 U.S. at 474-75.  Thus, to show minimum contacts, Plaintiff is required to point to "*an action of the defendant* purposefully directed toward the forum State."  *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (emphasis added).  It is black letter law that the **"'minimum contacts' necessary to create specific jurisdiction . . . . must arise out of contacts that the 'defendant himself' creates with the forum State."** *Walden v. Fiore*, 134 S. Ct. 1115, 1122-23 (U.S. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis added).  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id*. (collecting cases).

Here, Plaintiff's allegations contain only a minute connection to *this* forum.  He states only that a separate Defendant, Frank Owen, an alleged resident of St. Petersburg, Florida, called Plaintiff on May 8, 2018.  FAC ¶ 6, 12.  But Plaintiff makes *zero* allegations related to USHA directing any conduct in to or out of the State of Florida.  Plaintiff attempts to allege that USHA should be liable for Owen's conduct because Owen supposedly "represented himself to be an agent of Defendant USHA."  FAC ¶ 12.  This allegation once again relates to the conduct of Owen, not USHA.  This Court, or any court for that matter, cannot assert personal jurisdiction over a company every time some John or Jane Doe allegedly makes a representation that they are USHA's agent.

The theory of apparent authority supports this conclusion: "[a]pparent authority does not arise from the subjective understanding of the person dealing with the purported agent, nor from the appearance created by the purported agent himself; instead, apparent authority exists only where the principal creates the appearance of an agency relationship." *Ja Dan, Inc. v. L-J, Inc.*, 898 F. Supp. 894, 900 (S.D. Fla. 1995).  "There are three elements needed to establish apparent

6

agency: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by a third party in reliance on upon such relationship." *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011). Plaintiff has not alleged any of these elements. Plaintiff has not pleaded any action by USHA which could "create the appearance of an agency relationship", or any of the other elements, thus the conduct of Owen cannot confer personal jurisdiction over USHA.

Further, Plaintiff is a resident of Georgia, not Florida, *see* FAC ¶ 4, and he does not allege to have a phone number with a Florida area code or that he was in Florida when he received the alleged calls. Plaintiff only alleges that Owen, a Florida resident, called him. FAC ¶ 12. But Plaintiff does not allege that Owen called him from Florida. Accordingly, there could not be any cognizable contacts between USHA and Florida with respect to Plaintiff's claim. Courts lack specific jurisdiction over an out-of-state plaintiff's claims when the plaintiff cannot show a connection between the claims and the defendant's contacts with the forum state. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1781 (U.S. 2017). *See also Hicks v. Health Ins. Innovations, Inc.*, No. CV173344SDWLDW, 2017 WL 6764054, at *4 (D.N.J. Dec. 20, 2017), *report and recommendation adopted*, No. CV173344SDWLDW, 2018 WL 325308 (D.N.J. Jan. 8, 2018) (dismissing TCPA claim where plaintiff failed to allege that the phone calls in question were either received in or placed from the forum state). That is the scenario here, so the FAC should be dismissed for lack of personal jurisdiction.

### IV. THE COURT LACKS PERSONAL JURISDICTION OVER USHA FOR THE CLAIMS OF NONRESIDENT CLASS MEMBERS

For purposes of specific jurisdiction, a plaintiff's claims "must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers*, 137 S. Ct. at 1780 (internal quotations and bracketed text omitted). In *Bristol-Myers*, the Supreme Court found that due process and principles of federalism preclude the exercise of specific jurisdiction over a defendant with respect to non-residents' claims based on injuries suffered outside the forum. *Id.* at 1780-81. USHA's due process rights would therefore be violated if the Court exercises personal jurisdiction over non-resident claims in this case.

While the Supreme Court in *Bristol-Myers* did not conclude whether its holding was

7

applicable to class actions, district courts across the nation have held that the federalism concerns of *Bristol-Myers* are equally applicable to class actions where plaintiffs seeks to represent a nationwide class against a non-resident defendant. *See Rafferty v. Denny's, Inc.*, No. 5:18-CV-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019); *Garvey v. Am. Bankers Ins. Co. of Fla.*, No. 17-CV-986, 2019 WL 2076288, at *2 (N.D. Ill. May 10, 2019) (collecting cases); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 724 (E.D. Mo. 2019); *Chernus v. Logitech, Inc.*, No. 17-673(FLW), 2018 WL 1981481, at *7 (D.N.J. Apr. 27, 2018); *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *5 (D. Ariz. Oct. 2, 2017). While courts in the Southern District of Florida have thus far declined to extend *Bristol-Myers* to class actions, *See Goodman v. Sun Tan City, LLC.*, No. 18-81281-CIV, 2018 WL 6978695, at *4 (S.D. Fla. Dec. 14, 2018), *report and recommendation adopted,* No. 9:18-CV-81281, 2019 WL 1112258 (S.D. Fla. Jan. 8, 2019) (collecting cases), the Eleventh Circuit has not weighed in on the issue. This Court should reconsider the reasoning of other decisions in this District and, in accordance with due process, find that USHA is *not* subject to personal jurisdiction with respect to non-resident putative class members who can assert no claim based upon any nexus to *this* forum.

The fact that this is a class action should not change the underling analysis of *Bristol-Myers,* which has obvious parallels to a putative nationwide class action in federal court. "Nothing in *Bristol-Myers* suggests that its basic holding is inapplicable to class actions." *Chavez v. Church & Dwight Co., Inc.*, No. 17 C 1948, 2018 WL 2238191, at *10 (N.D. Ill. May 16, 2018) (slip op.). *Bristol-Myers* discusses a general principle of due process – in cases involving specific jurisdiction, there must be a connection between the forum and each plaintiff's claims.

Notably, courts have considered unnamed putative class members for fundamental issues that could abridge the rights of a party, such as the tolling of the statute of limitations, the binding effect of a judgment, and appealing an adverse judgment. *Sanchez v. Launch Technical Workforce Solutions, LLC*, 297 F. Supp. 3d 1360, 1368 (N.D. Ga. 2018) (citing *Am. Pipe & Contr. Co. v. Utah,* 414 U.S. 538, 540–60 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 184 (1985); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011)); *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1806-07 (2018). Including unnamed putative class members for purposes of determining whether the court has specific personal jurisdiction over a defendant is akin to those

decisions. Further, applying *Bristol-Myers* here is consistent with the interstate federalism concerns that underpin personal jurisdiction, i.e., that personal jurisdiction *divests courts* of the ability to reach out beyond their borders to render judgments that are not related to the States in which they reside. *See Bristol-Myers*, 137 S. Ct. at 1781. These same federalism concerns should dictate that a federal district court cannot reach beyond the borders of the forum state to exercise jurisdiction of absent class members' claims that lack any connection to the forum. Accordingly, the nationwide class allegations should be dismissed from the FAC.

> V. **PLAINTIFF HAS NOT SUFFICIENTLY PLEADED THE USE OF AN ATDS**

In order to state a claim under the TCPA, a plaintiff must sufficiently allege that a defendant (1) made a call; (2) using an ATDS; (3) to a cellular telephone. 47 U.S.C. § 227(b)(1); *Breslow v. Wells Fargo Bank*, N.A., 857 F.Supp.2d 1316, 1319 (S.D. Fla. 2012). Plaintiff's Complaint fails with respect to the second element because he does not allege sufficient facts to raise a plausible inference that an ATDS or a prerecorded voice was used to make any of the telephone calls he allegedly received.

The TCPA defines an ATDS as equipment that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial the stored numbers. 47 U.S.C. § 227(a)(1). The Eleventh Circuit recently clarified the definition of an ATDS, finding that random or sequential number generation is *required* in order for a telephone system to be considered an ATDS under the TCPA. *Glasser v. Hilton Grand Vacations Co., LLC*, No. 18-14499, 2020 WL 415811, at *2 (11th Cir. Jan. 27, 2020). The Third and Seventh Circuits have made the same ruling. *See Gadelhak v. AT&T Servs., Inc.*, No. 19-1738, 2020 WL 808270, at *1 (7th Cir. Feb. 19, 2020); *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018).

"To sufficiently plead the ATDS element of a TCPA claim, a plaintiff may not merely recite the statutory elements of the use of an ATDS or prerecorded voice without alleging additional facts to support those facts." *Turizo v. Jiffy Lube Int'l, Inc.*, No. 19-CV-61140, 2019 WL 4737696, at *2 (S.D. Fla. Sept. 27, 2019) (quoting *Adams v. Ocwen Loan Servicing, LLC*, 366 F. Supp. 3d 1350, 1355-56 (S.D. Fla. Oct. 26, 2018). A plaintiff must plead *facts*, not conclusions, regarding the use of an ATDS, and "[a] bare allegation that a defendant used an automatic telephone dialing system is not enough." *Id.* (quoting *McGinity v. Tracfone Wireless*,

9

*Inc.*, 5 F. Supp. 3d 1337, 1340 (M.D. Fla. Mar. 11, 2014) (listing cases)). Instead, a plaintiff must rely on more – actual facts. *Id.* (citing *Mesa v. Am. Express Educ. Assurance Co.*, No. 16-CV-24447-HUCK, 2017 WL 2212147, at *5 (S.D. Fla. May 18, 2017)). Whatever it may be, "[a] plaintiff must supply enough additional, independent facts 'to raise a reasonable expectation that discovery will reveal evidence' of the alleged misconduct." *Moore v. Online Info. Servs., Inc.*, No. 13-61167-CIV, 2014 WL 11696696, at *2 (S.D. Fla. Jan. 10, 2014) (quoting *Twombly*, 550 U.S. at 556).

In his original Complaint, Plaintiff makes just one conclusory allegation concerning the use of an ATDS, at Paragraph 9 of the Complaint: "Defendant used an 'automatic telephone dialing system' as defined by *47 U.S.C. § 227(a)(1)* to place its call to Plaintiff seeking to solicit its services." (italics in original). That's all. There were no facts that could give rise to an inference that an ATDS was actually used. *See id.* There still aren't. In the FAC, Plaintiff conveniently remembers that he heard a prerecorded voice during *one* of the alleged calls on April 3, 2018 – more than two years ago. Based on this one call, Plaintiff makes the illogical conclusion that "[t]herefore, on information and belief, Defendants used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its calls to Plaintiff, seeking to solicit Plaintiff to purchase Defendants' insurance products and services." FAC ¶10.

This inference fails because ATDS and prerecorded voice are two separate technologies, and while they both relate to 227(b), they require separate analyses. One has nothing to do with the other. Even if the use of a prerecorded voice could somehow infer the use of an ATDS, Plaintiff's ATDS claim is based only upon this single prerecorded voice call, and "[o]ne call and one pause [or prerecorded voice], standing alone, do not take the claim of the use of an ATDS beyond the speculative level." *Smith v. Aitima Med. Equip., Inc.*, No. EDCV1600339ABDTBX, 2016 WL 4618780, at *6 (C.D. Cal. July 29, 2016) (dismissing ATDS claims with prejudice). Moreover, Plaintiff makes no mention of random or sequential number generation, an absolute requirement for the definition of an ATDS. *Glasser*, 2020 WL 415811, at *2.

Therefore, the Complaint fails to sufficiently allege that USHA used an ATDS to make the calls at issue, so counts I and II must be dismissed, or the ATDS allegations should be stricken from the FAC, including the proposed class definitions, as immaterial. Plaintiff should know the basic black letter pleading standards by now, seeing as he is a serial TCPA litigant who has filed at least fifteen (15) TCPA lawsuits since 2017, and he was already provided with the

proper legal standard in USHA's first motion to dismiss (ECF 6). Plaintiff and his counsel are not new to Rule 8's pleading standards, and should not be permitted to haphazardly file a complaint without seemingly conducting even minimally reasonable investigations under Rule 11. Had they done such an investigation, they would know not just the pleading standards, but the basic facts of Plaintiff's claims. And perhaps they would have uncovered this new prerecorded voice call – actually two years old – prior to filing the original Complaint. Given the lack of any effort to file a plausible complaint, the Court should order the dismissal with prejudice.

## VI. PLAINTIFF HAS NOT SUFFICIENTLY PLEADED VICARIOUS LIABILITY

Paragraphs 7 and 13 of the FAC are a bare attempt to allege a theory of liability that simply has not been pleaded. First, in paragraph 7, Plaintiff defines "Defendant**s**" to include Defendant (USHA, singular), "its subsidiaries and agents", identified as "DOE DEFENDANTS 1 through 10," and Frank Gordon Owen. But the FAC contains only one allegation regarding the conduct of Owen, at paragraph 12, and none related to any DOE Defendants. *See Dairyland Animal Clinic, S.C. v. Amatheon, Inc.*, No. 16-CV-21820, 2016 WL 11129919, at *2 (S.D. Fla. Sept. 30, 2016) (granting motion to dismiss TCPA claim because the complaint contained no facts supporting the notion that any of John Does 1 through 10 sent played a role in sending the alleged faxes). Thus, Plaintiff has only pleaded direct liability against USHA, except perhaps as to the one call allegedly made by Owen (though no theory has been adequately pleaded as to that call, as explained below). *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (Tcpa) Rules*, 28 F.C.C. Rcd. 6574, 6582 (2013) (explaining "that a seller is not directly liable for a violation of the TCPA unless it initiates a call, but may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer.").

Then, in Paragraph 13, Plaintiff makes a boilerplate allegation asserting the existence of an agency relationship; specifically:

> at all relevant times, Defendant Owen was acting as an agent and/or employee of Defendant USHA, and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each other. Plaintiff is informed and

believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.[2] [3]

This conclusory statement does not come close to sufficiently alleging a claim for vicarious liability under the TCPA against USHA. That is because, "to allege the requisite agency relationship to support its TCPA vicarious liability claim against [USHA, Plaintiff must allege facts to show that [USHA] exercised substantial control over [Owen or the DOE DEFENDATNS'] actions, or "ratification of the agent's conduct, or representations that the agent acts with authority." *Snyder v. iCard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2017 WL 10379592, at *2 (S.D. Fla. May 11, 2017) (internal quotations omitted) (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014)).

"[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd,* 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016). "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014). "Three theories of agency could support vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055 (N.D. Cal. Jan. 4, 2018) (citing *Thomas v. Taco Bell Corp.*, 582 Fed. App'x. 678, 69 (9th Cir. 2014)). Here, the FAC's allegations are insufficient under any theory.

*Actual Authority*: "Actual authority is limited to actions 'specifically mentioned to be done in a written or oral communication' or 'consistent with' a principal's 'general statement of what the agent is supposed to do.'" *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). *see also Knapp v. Sage Payment Solutions, Inc.*, No. 17-391 MMC, 2018 WL 659016, at *2 (N.D. Cal. Feb. 1, 2018). Plaintiff has made no allegations regarding whether

---

[2] There is no allegation, not even a conclusory one, that the DOE defendants are agents of USHA, so even if Plaintiff had alleged conduct by the DOE defendants, he would not have pleaded any theory of vicarious liability as it relates to such conduct.

[3] This allegation is almost identical to the allegation the one found insufficient in *Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019).

USHA has provided Owen with any authority. The only agency allegation, in Paragraph 13 of the FAC, is "too general and conclusory to plead" any actual authority conferred by USHA upon Owen. *Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *5 (N.D. Cal. Mar. 20, 2019). *See also See also Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015).

*Apparent Authority*: *See* Section III, *supra*, explaining that no theory of apparent authority has been pleaded because Plaintiff "does not allege that he reasonably relied upon something said or done by [USHA] to his detriment, and therefore the apparent authority theory fails." *Canary*, 2019 WL 1275343, at *8.

*Ratification*: "'Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" *See Naiman v. Tranzvia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *13 (N.D. Cal. Dec. 4, 2017) (quoting Restatement (Third) of Agency § 4.01(1), 4.01(2). A principal is not bound, however, "by a ratification made 'without knowledge of material facts' about the agent's act." *See id.* (quoting Restatement (Third) of Agency § 4.06 cmt. b). Plaintiff has not alleged any conduct by USHA that could be considered ratification of the alleged telephone calls, or that such ratification occurred with knowledge of material facts regarding the calls..

As Plaintiff has alleged no *facts* that can infer an agency relationship between USHA, Owen, or any of the DOE Defendants, any claim for vicarious liability against USHA for the alleged calls must be dismissed.

### VII. PLAINTIFF ADMITS VENUE IS NOT PROPER IN THIS COURT

Plaintiff does not allege that venue is proper in this Court. Instead, he freely admits that it is not, and instead that this lawsuit should have been filed in the United States District Court for the Middle District of Florida. While USHA disagrees that venue is proper in any court within the State of Florida, it is beyond comprehension that Plaintiff would file suit in this district without even a good faith belief that venue is proper. This pleading deficiency is grounds for dismissal. *See* 28 U.S.C. § 1406(a). The Court should dismiss the FAC, not transfer the action, lest Plaintiff be rewarded for wasting this Court and USHA's resources.

## VIII. IF THE COURT DOES NOT DISMISS THE ACTION ENTIRELY, THE PROCEEDINGS SHOULD BE STAYED PENDING THE RULING IN *AAPC*

The applicable factors all weigh in favor of granting a relatively brief stay of the proceedings of, at most, five months pending the Supreme Court's ruling in *AAPC*. If the restrictions of 47 U.S.C. § 227(b)(1)(A), which forms part of the basis of Plaintiff's claims, are invalidated as unconstitutional, that would simplify the issues in this case by disposing of Count I and II of the FAC entirely. Plainly, a court cannot enforce an unconstitutional statute.

### a. A Decision in *AAPC* is Imminent and May Dispose of this Suit

The requested stay will not be immoderate or indefinite in duration. A stay is not immoderate or indefinite in duration where "[t]he Supreme Court has already granted *certiorari*," because that "means . . . a decision is imminent within a year." *Boise v. ACE USA, Inc.*, No. 15-CIV-21264, 2015 WL 4077433, *6 (S.D. Fla. July 6, 2015). Since the Supreme Court has granted *certiorari* in *AAPC*, this standard is met. Moreover, according to a 2015 article from the Duke Law Review, which sampled 7,219 cases decided by the United States Supreme Court between 1946 and 2012, 99 percent of Supreme Court cases are decided in the same term in which *certiorari* is granted. Lee Epstein, *et al.*, *The Best for Last: The Timing of U.S. Supreme Court Decisions*, 64 Duke L.J. 991, 993 nn.5 & 6 (2015). The Supreme Court held oral argument in *AAPC* on May 6, 2020. It is therefore reasonable to expect a ruling in *AAPC* by the end of the current term. Such a stay cannot be deemed to be of indefinite or immoderate length.

If the Supreme Court finds that the prohibition on the use of automated telephone dialing systems set forth in § 227(b)(1)(A) is an unconstitutional restriction on speech that must be severed from the TCPA, then Plaintiff's claims under that section would be extinguished. Simply put, "[a]n unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. Shelby County*, 118 U.S. 425, 442 (1886). Thus, the question of whether the Fourth Circuit's invalidation of only the "government debt collection" exemption was correct, or if the underlying restrictions of § 227(b)(1) that are also at issue in this case should also be invalidated, will have direct and potentially dispositive application to this lawsuit.

14

As a general matter, when concluding that an exception to a speech restriction shows that the restriction is unconstitutional, courts have consistently invalidated the restriction – as relevant in this case, 47 U.S.C. § 227(b)(1)'s prohibition on the use of prerecorded voices – and not just the exception (because keeping the restriction in place would, ironically, result in more restricted speech).[4] The Eleventh Circuit recently suggested that it believes the entire law may be invalid on this ground in a case that did not involve any attempts to collect debt issued or guaranteed by the United States. *See Glasser*, 2020 WL 415811, *5 ("[H]ow could it be consistent with the First Amendment to make exceptions for calls with a specific content, such as the exception for calls about government debts?") (citing *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 169-171 (4th Cir. 2019)). Thus, it is hardly a far-fetched notion that the Supreme Court may rule in a manner that will lead to the invalidation of at least one of the TCPA provisions at issue in this lawsuit.

It is hard to imagine a scenario that would be more dispositive to Counts I and II, and streamline the issues in this case, than for the sole basis for that claim to be ruled unconstitutional, and thus unenforceable. Numerous district courts have stayed TCPA lawsuits when an appellate court was set to issue a controlling ruling that was likely to have a substantial effect on narrowing or streamlining the claims and issues.[5] Here, the potential outcome of the

---

[4] *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66 (2011); *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 190 (1999); *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 592-93 (1983); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 795 (1978); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 (1972). *See also*, *e.g.*, *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (declining to sever unconstitutional exception to ordinance regarding content of advertising signs, even though "the rest of the statute could surely function independently," because "[e]liminating the offending exception would mean that we would be requiring the State to restrict more speech than it currently does"); *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1572 (11th Cir. 1993) (criticizing the district court for invalidating "only the exemption" to a permit requirement because that leaves plaintiff "in a worse position than if the City had prevailed, and thus the permit requirement "must also be declared unconstitutional as it exists in this statutory framework").

[5] *See, e.g.*, *Barnes v. CS Mktg. LLC*, No. 19-24218-CIV, 2020 WL 30373, *3 (S.D. Fla. Jan. 2, 2020); *Saleh v. Me Bath Spa Experience, LLC*, No. 17-CV-62322, 2018 WL 398325, *4 (S.D. Fla. Jan. 12, 2018); *Ricks v. Allied Interstate, LLC*, No. 3:16-CV-00205-HES-PDB, 2016 WL 4505173 (M.D. Fla. July 11, 2016); *Shahin v. Synchrony Fin., et al.*, No. 8:15-cv-02941-MSS-EAJ, 2016 WL 4502461 (M.D. Fla. Apr. 12, 2016); *Mackiewicz v. Nationstar Mortg., LLC*, Case No. 6:15-cv-00465, 2015 WL 11983233 (M.D. Fla. Nov. 10, 2015); *Tel. Sci.*, 2015 WL 7444409 at *3.

*AAPC* ruling could be to completely dispose of Plaintiff's TPCA claims under § 227(b).

### b. Staying This Action Will Conserve Judicial Resources

A stay is appropriate at this time because of *AAPC's* potentially dispositive consequences for the case at hand. Indeed, there is a distinct possibility that a portion of Plaintiff's claims will become null and void as a result of the Supreme Court's decision. If that happens, "any judicial resources spent on this matter between now and then would essentially be to no avail." *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577, 2015 WL 5947669, *4 (W.D. Pa. Oct. 13, 2015). To paraphrase Judge Cooke, "the significant time, expense, and resources required to litigate this case on the merits will be for naught if the Supreme Court rules" that the same restrictions at issue in this lawsuit violate the First Amendment and are therefore unconstitutional and invalid. *Boise*, 2015 WL 4077433 at *5 (internal quotation omitted). In granting a stay pending the Supreme Court's ruling, a court in the Middle District of Florida recently held as follows "that any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources and a waste of the parties' time and energy." *See* Ex. A at 2. Accordingly, it is in the best interests of judicial economy to conserve the Court's resources for those actions in which there is not a risk that a relatively imminent decision (by the end of the 2020 summer term) from the Supreme Court will undo any Court decisions and vitiate any costly and extensive motion practice, briefing, and discovery conducted by the litigants.

### c. A Stay Will Benefit the Public Interest

The requested stay would also be in the public interest. Moving forward with the Sword of Damocles-like situation of the Supreme Court ruling looming over the ensuing proceedings, when it could dispose of part of this action and simplify the proceedings, would not serve any party's or potential class member's interests. Not only would all of the parties suffer prejudice should this case not be stayed, but the public at large would, as well, particularly since "[a] moderate delay here will free up judicial resources." *Boise*, 2015 WL 4077433 at *6. *See also*, *e.g.*, *Southstar Capital Group, I, LLC v. 1662 Multifamily LLC*, No. 6:18-CV-1453-ORL-40DCI, 2019 WL 3752892, *5 (M.D. Fla. Aug. 8, 2019) (finding stay appropriate because "a stay would serve the public interest by preserving judicial economy and ensuring the orderly progression of this litigation."); *Lopez v. Miami-Dade County*, 145 F. Supp. 3d 1206, 1208 (S.D. Fla. 2015) (staying proceedings because "there is a public interest in judicial economy and efficiency").

Absent a stay, those limited judicial resources might ultimately be wasted. The public interest would be better served by entering a brief stay of most likely no more than five months in this case and allow the Court's time and resources to be directed toward the other matters on its case docket during the stay, particularly when any time spent on this case in the next five months may end up being for naught.

### d.  None of the Parties Will Suffer a Hardship or Prejudice from a Stay

Should a stay be granted, no prejudice will befall any party. While Plaintiff may argue he has the right to the speedy resolution or her claims, "having to wait" even as much as "eight to nine months to continue litigation is not, itself, sufficiently prejudicial to outweigh the very plain benefits of staying the case, particularly when the issues pending at the Supreme Court go to this Court's power to hear the case." *Duchene*, 2015 WL 5947669 at *4. Indeed, courts generally have found that a stay of up to a year does not constitute undue prejudice. *See Jean v. City of Dallas, Texas*, No. 3:18-CV-2862-M, 2019 WL 4597580, *3 (N.D. Tex. Sept. 22, 2019); *Quinn-White v. Novartis Pharm. Corp.*, No. CV 16-4300 PSG (AGRx), 2016 WL 11519285, *4 (C.D. Cal. Oct. 7, 2016); *Boise*, 2015 WL 4077433 at *6. The hardship to USHA if the case continues and the lack of hardship to Plaintiff and putative class members if the case is stayed further weigh in favor of a brief stay of the proceedings in this case until the Supreme Court issues its ruling in *AAPC*.

### CONCLUSION

Plaintiff has not pleaded any facts that connect the alleged conduct of USHA to this forum, so the Court does not have personal jurisdiction over USHA. Nor has Plaintiff pleaded any facts sufficient to allege any theory of vicarious liability. Therefore, this Court should dismiss Plaintiff's FAC for failure to state a claim. Further, the FAC should be dismissed because Plaintiff admittedly filed it in the wrong district.

Alternatively, if the Court does not find dismissal to be appropriate, the Court should stay this case pending the Supreme Court's decisions in *AAPC* to lessen the Court's and the parties' litigation burden. It is in the best interests of this Court's available judicial resources, the public interest, and the parties' respective litigation burdens to await decision from the Supreme Court in *AAPC* to ascertain the decision's disposition upon this action. Accordingly, Defendant requests that this Court enter an order dismissing the FAC, or, alternatively, staying proceedings

pending the Supreme Court's decision in *AAPC*, and ordering such further relief as this Court deems just and proper.

Dated: May 29, 2020                                          Respectfully submitted,

By: */s/ Gregg I. Strock*
JEFFREY A. BACKMAN
Florida Bar No. 662501
GREGG I. STROCK
Florida Bar No. 1010140
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL  33301
(954) 491-1120
jeffrey.backman@gmlaw.com
khia.joseph@gmlaw.com
gregg.strock@gmlaw.com
lisa.webster@gmlaw.com

*Counsel for USHEALTH Advisors, LLC*