## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

KEITH HOBBS, individually and on behalf
of all others similarly situated,

     Plaintiff,

v.

USHEALTH ADVISORS, LLC, *et al.*,

     Defendants.

Case No. 0:20-cv-60347-RS

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT USHEALTH ADVISORS LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, OR, ALTERNATIVELY,  TO STAY PROCEEDINGS

Now comes the Plaintiff, KEITH HOBBS ("Plaintiff"), by and through his attorneys, and for his response to Defendant USHEALTH ADVISORS, LLC's ("USHealth") Motion to Dismiss Plaintiff's First Amended Complaint, or, Alternatively, to Stay Proceedings (hereafter the "Motion"), Plaintiff states as follows:

## I.    INTRODUCTION

In its Motion (Dkt. #13), USHealth argues that Plaintiff's First Amended Complaint (Dkt. #9; the "FAC") should be dismissed, or, alternatively, that certain allegations should be stricken and this matter should be stayed, for the following reasons. USHealth claims that: (1) this Court lacks personal jurisdiction over USHealth; (2) this Court lacks personal jurisdiction over USHealth for the claims of non-resident class members; (3) Plaintiff has not sufficiently pled that USHealth used an "automated telephone dialing system," ("ATDS") as defined in the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*; (4) Plaintiff has not sufficiently pled vicarious liability; (5) the Southern District of Florida is not the proper venue; and (6) this Court should stay

proceedings pending the Supreme Court's decision in *Barr v. American Ass'n of Political Consultants,* No. 19-631.

As Plaintiff will demonstrate, USHealth's arguments fail, and its motion should be denied. First, this Court does have specific personal jurisdiction over USHealth. Second, USHealth's claim that this Court lacks personal jurisdiction over non-resident class members is erroneous and contrary to the rulings by the vast majority of courts around the country that have considered this issue, including by judges within this District. Third, Plaintiff did sufficiently plead that USHealth used an ATDS in violation of the TCPA. Fourth, Plaintiff did sufficiently plead vicarious liability. Fifth, Plaintiff has requested that this case be transferred to the Middle District of Florida. Finally, this Court should not stay this proceeding while awaiting the Supreme Court's decision in *Barr*, as that decision is unlikely to impact this case, while Plaintiff, and the putative class members, would be prejudiced by a stay.

## II.    THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER USHEALTH.

To survive a motion to dismiss, the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Specific personal jurisdiction requires that USHealth purposefully availed itself of the privilege of conducting activities within the forum state, Florida. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-475 (1985). Plaintiff is required to show minimum contacts between USHealth and the State of Florida to establish specific personal jurisdiction by alleging "an action of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Co. v.*

*Superior Court*, 480 U.S. 102, 112 (1987). If Plaintiff sufficiently alleges the prima facie requirements of jurisdiction, then Defendant must raise "through affidavits, documents or testimony, a meritorious challenge to personal jurisdiction." *Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (internal citations omitted). The court must accept the facts alleged in the complaint as true to the extent they are uncontroverted by the defendant's affidavits. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). Where the plaintiff's evidence and defendant's evidence conflict, all reasonable inferences must be construed in favor of the plaintiff. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

USHealth argues that Plaintiff has not sufficiently pled facts that support any cognizable contacts between USHA and Florida with respect to Plaintiff's claims. However, Plaintiff has alleged in his FAC that when he answered one of the automated telemarketing calls at issue, he spoke with USHealth's Florida-based agent, co-Defendant Frank Gordon Owen.  (USHealth and Owen are hereafter collectively referred to as "Defendants.") *See* FAC, ¶ 12. As alleged in Plaintiff's FAC, on or about May 8, 2018, Plaintiff answered Defendants' call to his cellular telephone number ending in -7558 and spoke with Owen, who represented himself to be an agent of USHealth. Plaintiff also alleged that during that conversation, Owen solicited Plaintiff to purchase USHealth's insurance products and services. *See* FAC, ¶ 12. Plaintiff also alleged that Owen is an individual who resides in St. Petersburg, Florida and maintains a business office in Tampa, Florida. *See* FAC, ¶ 6. Plaintiff also pled in his FAC that he received calls from (813) 331-8997, a Florida telephone number with a Tampa area code. *See* FAC, ¶ 11. Based on the well pled facts above, the Court could draw a reasonable inference that USHealth's agent, Owen, called

Plaintiff from Tampa or St. Petersburg, Florida using telephone number (813) 331-8997 to place the call.

USHealth's failed attempt at a meritorious challenge to the FAC allegations articulated above do not include any testimony, documents, or any evidence whatsoever that Owen is not USHealth's agent. *See* Declaration of Dean Whaley ("Whaley"), Dkt. #13-2. The reason Whaley does not state in his Declaration that Owen is not an agent of USHealth is because that statement would be false. In fact, Owen is listed, on a website that appears to be maintained by USHealth, along with his photograph and a link where one can fill out a form to "Get a Quote." There is also a link on that website page which can be used to send Owen an email at the email address FRANK.OWEN@USHAdvisors.com. *See* https://www.ushagent.com/gordonowen. Owen is also listed as an agent of USHealth, located in St. Petersburg, Florida, on a website maintained by the State of Utah Insurance Department. *See* https://secure.utah.gov/agent-search/organizationDetails.html?agent=J0pnO71yKA and https://secure.utah.gov/agent-search/agentDetails.html?agent=10pNGOm6K8. Interestingly, although Whaley states in his Declaration that USHealth "has never owned or used the telephone number (503) 468-5336," he does not state that USHealth has never used the Florida telephone number from which Plaintiff alleges he received Owen's illegal telemarketing call. *See* Dkt. #13-2, ¶ 7.

USHealth's only challenge is a blanket statement that this Court "cannot assert personal jurisdiction over a company every time some John or Jane Doe allegedly makes a representation that they are [USHealth]'s agent." *See* Dkt. #13, p. 6. USHealth's bald assertion leaves Plaintiff's allegations uncontroverted, and USHealth has not offered enough to demonstrate that Owen is not its agent. Therefore, USHealth's arguments related to specific personal jurisdiction fail and should be denied.

However, if this Honorable Court determines that it does not have personal jurisdiction over USHealth, Plaintiff respectfully requests that the Court exercise its discretion to transfer this case to the appropriate forum, rather than dismiss the case. The Court has the ability to transfer the case instead of dismissal should the Court believe that transfer would serve as a better remedy in the interests of justice. *See, e.g., Pinson v. Rumsfeld*, 192 F.App'x 811, 817 (11th Cir. 2006). Furthermore, if the Court determines that there is lack of personal jurisdictional, it cannot proceed with a further analysis of the merits of Plaintiff's claims. As the Supreme Court explained in *Christianson v. Colt Indus. Operating Corp*. 486 U.S. 800, 803 (1988), "The Federal Circuit, after concluding that it lacked jurisdiction, erred in deciding to reach the merits anyway 'in the interest of justice.' Courts created by statute only have such jurisdiction as the statute confers. Upon concluding that it lacked jurisdiction, the Federal Circuit had authority, under 28 U.S.C. § 1631, to make a single decision—whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court of appeals that has jurisdiction."

## III.   THIS COURT HAS JURISDICTION OVER THE CLAIMS OF NONRESIDENT CLASS MEMBERS.

USHealth claims, based on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,* 137 S.Ct. 1773 (2017), that it would offend traditional notions of due process and federalism to force USHealth to litigate a nationwide class action outside of its state of incorporation or the state in which it is headquartered. Specifically, USHealth refers to language in *Bristol-Myers* which states that the suit must arise out of or relate to the USHealth's contacts with the forum. *See Bristol-Myers*, 137 S.Ct. at 1780 (citations omitted). In *Bristol-Myers*, the Court found that injuries to some plaintiffs in the forum state, California, did not provide the required connection of plaintiffs from other states in a *mass tort action*. However, it is

inappropriate to apply *Bristol-Myers* to nonresident putative class members in a nationwide *class action* case. Numerous courts around the country have reached this conclusion.[1]

Class actions are different from many other types of aggregate litigation, and that difference matters in numerous ways for the nonnamed members of the class. *Mussat v. IQVIA*, 953 F.3d 441, 446-447 (7th Cir. 2020). Nonnamed class members are not parties for many jurisdictional purposes. *See Devlin v. Scardelletti,* 536 U.S. 1 (2002) (holding that nonnamed class members are not parties for purposes of a variety of procedural rules, and determining the applicability of those rules may differ based on context). USHealth's argument therefore boils down to the assertion that although absent class members are not considered parties for purposes of diversity of citizenship, amount in controversy, Article III standing, or venue, they should be considered parties for the purpose of determining personal jurisdiction. As one court stated, "That cannot be right." *Al Haj v. Pfizer Inc.*, 338 F.Supp.3d 815, 820 (N.D. Ill. 2018). There appears to be no legal basis for USHealth's assertion beyond citing to *Bristol-Myers*, which is a mass tort action case, not a class action case. USHealth cites decisions by a minority of District Courts, which are heavily outweighed by decisions of the bulk of the courts that have considered this issue, including the Seventh Circuit Court of Appeals and courts within this District.

---

[1] *See Sloan v. Gen. Motors LLC*, 287 F.Supp.3d 840, (N.D. Cal. Feb. 7, 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018); *Doe v. Cotterman*, 2018 WL 1235014 (N.D. Ill. March 9, 2018); *In re Morning Song Bird Food Litig.*, No. 12CV01592 JAH-AGS, 2018 WL 1382746 (S.D. Cal. March 19, 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4224723 (N.D. Cal. Sep. 22, 2017) (rejecting the argument that *Bristol-Myers* precludes a court from exercising personal jurisdiction over the claims of absent class members who are out-of-state); *In re Chinese-Manufactured Drywall Prods. Liability Litig.*, 2017 WL 5971622, at *12-14 (E.D. La. Nov. 30, 2017); *Swamy v. Title Source, Inc.*, Case No. 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017); *Peters v. Wells Fargo Bank, N.A.*, 2018 WL 398238 (N.D. Cal. Jan. 12, 2018); *Feller v. Transamerica Life Insurance Company*, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017); *Tickling Keys, Inc. v. Transamerica Financial Advisors, Inc.*, 2018 WL 1701994 (M.D. Fla. April 4, 2018); *Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017); *Alvarez v. NBTY, Inc.*, 2017 WL 6059159 (S.D. Cal. Dec. 6, 2017); *Molock v. Whole Foods Market, Inc*., 2018 WL 1342470 (D. D.C. March 15, 2018); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Laboratory Products*, Inc., 2018 WL 1377608 (E.D. LA. March 19, 2018). *See also* Newberg on Class Actions § 2:6 (5th ed. 2017).

A. **The *Bristol-Myers* decision should not be applied to this case, because *Bristol-Myers* was a mass tort case, not a class action.**

A basic appreciation of the class action device makes clear why USHealth's argument fails. Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982). A threshold requirement for class certification is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940) (explaining that class actions are an invention of equity designed to allow courts to efficiently resolve suits where the number of interested individuals is too great to permit joiner). Fed. R. Civ. P. 23 authorizes "one or more members of a class" to sue as "*representative parties on behalf of all members*," provided the class representative meets the adequacy and typicality requirements. Fed. R. Civ. P. 23(a)(3)-(4) (emphasis added).

Therefore, "[n]onnamed class members…may be parties for some purposes and not for others." *Devlin v. Scardelletti,* 536 U.S. 1, 10 (2002). Nonnamed class members cannot defeat complete diversity. For courts to consider the location of all class members for the purposes of determining diversity jurisdiction would destroy diversity in almost all class actions. *Id*. Nonnamed class members are not considered parties for purposes of calculating the amount in controversy in diversity suits not brought under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Nonnamed class members are not parties for purposes of determining Article III standing. *Neale v. Volvo Cars of North America, LLC,* 794 F.3d 353, 367 (3rd Cir. 2015); *Bernal v. NRA Group*, LLC, 318 F.R.D. 64, 72 (N.D. Ill. 2016). Nonnamed class members are not parties for purposes of determining venue. *See Appleton Electric Company v. Advance-United Expressways*, 494 F.2d 126, 140 (7th Cir. 1974) ("Rule 23 must be interpreted to allow inclusion of all class members, whatever their connection with the forum."). Applying these rules, which do not

consider nonnamed class members when determining diversity jurisdiction, Article III standing, and venue, leads to the conclusion that that nonnamed class members should likewise not be considered parties when determining personal jurisdiction. *Al Haj v. Pfizer Inc.*, 338 F.Supp.3d 815, 820-821 (N.D. Ill. 2018).

The Seventh Circuit Court of Appeals' recent decision in *Mussat v. IQVIA*, 953 F.3d 441 (7th Cir. 2020), further support the denial of USHealth's Motion. The Seventh Circuit definitively ruled on the exact issue raised in USHealth's Motion in the recent *Mussat* decision, holding that "the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* at 447.

A review of decisions from judges within this District on this issue also supports Plaintiff's position. Multiple opinions from within this District have considered the same arguments in different contexts, including TCPA class actions, and all of those courts rejected the arguments reflective of USHealth's position while supporting the arguments reflective of Plaintiff's position. *See Becker v. HBN Media, Inc.,* 314 F.Supp.3d 1342, 1344-45 (S.D. Fla. 2018) (holding *Bristol-Myers* is not applicable to class actions where the court has specific jurisdiction over the defendant with regards to the named plaintiff's claims); *Tickling Keys, Inc. v. Transamerica Financial Advisors, Inc.,* 305 F.Supp.3d 1342, 1350 (M.D. Fla. 2018) (declining to extend *Bristol-Myers* to the class action context in part because, in contrast to mass-tort actions, in class actions one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs and are the only plaintiffs actually named in the complaint); *Goodman v. Sun Tan City LLC,* No. 18-81281-CIV-ROSENBERG/REINHART, 2018 WL 6978695, at *3-5 (S.D. Fla. December 14, 2018) (adopting Magistrate Judge Reinhart's recommendations not to extend *Bristol-Myers* to a class action context

in part because the abstract concerns of personal jurisdiction limitations in a mass tort case filed in state court are not necessarily implicated when a case is brought in federal court).

The federal court system requires that a court have both subject matter jurisdiction and personal jurisdiction in order to hear any case. "[R]estrictions on personal jurisdiction 'are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States.'" *Bristol-Myers*, 137 S.Ct. at 1780, citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958). By requiring both subject matter and personal jurisdiction, federal courts implement "[c]ooperation and comity," that are "essential to the federal design." *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 586 (1999). "Subject-matter jurisdiction cannot be waived or forfeited…" *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019). Subject-matter jurisdiction is therefore more demanding than personal jurisdiction.

In *Bristol-Myers,* a group of plaintiffs brought a California *state law mass tort action* seeking compensation for injuries caused to individuals who used the drug Plavix. The defendant was a Delaware entity whose principal place of business is located in New York. *Bristol-Myers*, 137 S.Ct. at 1778. The Court held that California state courts lacked specific personal jurisdiction over the out-of-state defendant with regards to the out-of-state plaintiffs because insufficient contacts existed between the defendant's in-state conduct in California and the out-of-state claims. *Id.* at 1783. However, in Justice Sotomayor's dissent, she correctly observed that the Court was not confronting the question of whether its opinion would apply to class actions seeking nationwide class certification. "The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id.* at 1789, f.n. 4 (Sotomayor, J., dissenting).

Yet that is exactly the application of *Bristol-Myers* which USHealth urges this Court to adopt. Justice Sotomayor's observation of the exact question before the Court in *Bristol-Myers* is key, because mass tort actions and class actions are procedurally distinct. "That distinction is critical because there are no absent class members in a mass action; rather, 'each plaintiff [in a mass action] is a real party in interest to the complaints.'" *Al Haj v. Pfizer Inc.*, 338 F.Supp.3d 815, 819 (N.D. Ill. 2018)., quoting *Molock v. Whole Foods Market, Inc.,* 297 F.Supp.3d 114, 126 (D. D.C. 2018). Thus, considering the rules applied to nonnamed class members when determining diversity jurisdiction, Article III standing, and venue, in conjunction with the total lack of nonnamed class members in mass tort actions, applying the *Bristol-Myers* decision to class actions is completely inappropriate.

### B. *Bristol-Myers* was not intended to fundamentally change the national legal landscape for nationwide class actions.

*Bristol-Myers* was intended to be a "straightforward application of settled principles of specific jurisdiction." *Bristol-Myers*, 137 S.Ct. at 1783. Yet no pre-*Bristol-Myers* decisions exist which hold that in a class action, where the defendant is not subject to general jurisdiction, specific jurisdiction must be established not only as to the named plaintiff(s), but also as to the absent class members. *Al Haj*, 338 F.Supp.3d at 818. Applying *Bristol-Myers* as USHealth urges this Court to do would virtually upend more than eighty years of judicial precedent. It would create a doctrine that encourages judicial inefficiency by requiring multiple identical suits to be filed across several states at the same time. *See Hansberry v. Lee,* 311 U.S. 32, 40-41 (1940) (explaining that class actions are an invention of equity designed to allow courts to efficiently resolve suits where the number of interested individuals is too great to permit joiner). Furthermore, as a practical matter, applying *Bristol-Myers* as USHealth urges would likely limit the litigation of most nationwide class actions to Delaware, New York, Illinois, Texas, and California, due to the popularity of many

companies incorporating in Delaware and headquartering in New York, Illinois, Texas, and California. *See, e.g., Bristol-Myers*, 137 S.Ct. at 1789 (Sotomayor, J., dissenting). If the Supreme Court, when deciding *Bristol-Myers*, intended to limit huge numbers of nationwide class actions to four or five states, it follows that the Court would have at least mentioned its intention to do so.

In the case at bar, the result of the ruling urged by USHealth in its Motion would be to either dismiss the nationwide class allegations of this case, encouraging multiple identical suits across multiple states, or voluntarily transfer this case to the Northern District of Texas, so as to preserve the nationwide class allegations. In the event the Court agrees with USHealth's position, Plaintiff respectfully requests the case be transferred instead of dismissing the claims of the non-Florida class members.

## IV.    PLAINTIFF SUFFICIENTLY PLED IN HIS FIRST AMENDED COMPLAINT THAT USHEALTH USED AN ATDS.

The TCPA prohibits the use of an automatic telephone dialing system *or* an artificial or prerecorded voice by any person in the United States to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party) to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).

Plaintiff sufficiently plead that Defendants used an ATDS, and a prerecorded voice, to place calls to Plaintiff. Plaintiff alleges that when he answered Defendants' call to his cellular telephone on or about April 3, 2018, he heard a voice recording which asked him to press a specific number on his phone if he wished to speak with a live representative. *See* FAC, ¶ 9. Therefore, Plaintiff alleges, on information and belief, that Defendants used an automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1), to place its calls to Plaintiff, seeking to solicit Plaintiff to purchase Defendants' insurance products and services. *See* FAC, ¶ 10.

Yet, despite the well pled facts of paragraphs 9 and 10 of Plaintiff's FAC, USHealth argues that Plaintiff's FAC should be dismissed. In support of its argument, USHealth cites to non-binding district court decisions from California. USHealth's argument should be disregarded because it imputes extra pleading requirements on Plaintiff not found in the TCPA. Notably, the TCPA does not require multiple calls to a cellular phone using an "automated telephone dialing system" in order to establish liability. *See* 47 U.S.C. § 227(b)(1)(A)(iii).  Furthermore, the case cited by USHealth, *Smith v. Aitima Med. Equip., Inc.,* is distinguishable from the case at bar.  The plaintiff in *Smith* alleged to have received only one phone call in total, and the Court found that phone call alone, without more specific evidence of the use of an ATDS, was not enough to establish the use of an ATDS. *See Smith v. Aitima Med. Equip., Inc.*, No. EDCV1600339ABDTBX, 2016 WL 4618780, at *6 (C.D. Cal. July 29, 2016).

USHealth further argues that Plaintiff needed to allege facts showing that USHealth's technology used random and sequential number generation to establish a claim under the TCPA. This argument should be disregarded because it imputes heightened pleading standards not required for Plaintiff to survive a motion to dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Plaintiff does not have access to Defendants' phone system records, nor information regarding the exact technology used by Defendants. If courts required that all TCPA plaintiffs allege facts establishing that the defendants' dialer technologies used random and sequential number generation, then virtually no TCPA complaints would survive any motion to dismiss. Such an expectation would place on Plaintiff the burden to make allegations about information and evidence over which Defendants maintain sole control.

USHealth's argument fails because this Court could draw a reasonable inference, based on Plaintiff's allegations in paragraphs 9 and 10 of his FAC, that Defendants contacted Plaintiff on

his cellular phone using an ATDS **and** an artificial or prerecorded voice. The TCPA prohibits the use of an automatic telephone dialing system **or an artificial or prerecorded voice** by any person in the United States to make a call (other than a call made for emergency purposes or made with the prior express consent of the called party) to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff clearly alleged that Defendants used a prerecorded voice when making a call to Plaintiff on April 3, 2018. Therefore, even if this Court finds Plaintiff's allegations are insufficient to establish the use of an ATDS (a position which Plaintiff disputes), Plaintiff still has sufficiently pled that Defendants' violated the TCPA and his FAC should not be dismissed. *See* FAC, ¶ 9.

## V.   PLAINTIFF PLAUSIBLY PLED VICARIOUS LIABILITY IN HIS FIRST AMENDED COMPLAINT.

A seller may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois, N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules,* 28 F.C.C. Rcd. 6574, 6582 (2013). "To recover under a theory of vicarious liability such as actual or apparent agency, it must be shown that the agent or apparent agent's conduct was motivated, at least in part, by the purpose of serving the employer. It is entirely clear that responsibility for the intentional wrongful acts of a servant-employee may be visited upon his master-employer under the doctrine of respondeat superior only when that conduct in some way furthers the interests of the master or is at least motivated by a purpose to serve those interests, rather than the employee's own." *Ayers v. Wal-Mart Stores, Inc.*, 941 F.Supp. 1163, 1169 (M.D. Fla. 1996) (citations omitted).

Plaintiff sufficiently pleads vicarious liability in his FAC. Specifically, Plaintiff alleges that on or about May 8, 2018, Plaintiff answered Defendants' call to his cellular telephone number

ending in -7558 and spoke with Owen, who represented himself to be an agent of USHealth. During that conversation, Owen solicited Plaintiff to purchase USHealth's insurance products and services. *See* FAC, ¶ 12. Plaintiff also alleges that at all relevant times, Owen was acting as an agent and/or employee of USHealth and was acting within the course and scope of said agency and/or employment, with the full knowledge and consent of each other. *See* FAC, ¶ 13. Finally, Plaintiff alleges that each of the acts and/or omissions complained of in the FAC were made known to, and ratified by, each of the Defendants. *Id.*

Despite the well pled facts listed above, USHealth argues that Plaintiff has not pled sufficient facts to establish vicarious liability. USHealth's argument fails because it imputes heightened pleading standards not required for Plaintiff to survive a motion to dismiss. "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Kristensen v. Credit Payment Servs.*, 12 F.Supp.3d 1292, 1301 (D. Nev. 2014), citing *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) ("[A] court must take the allegations as true, no matter how skeptical the court may be."). Yet, USHealth's argument centers on an imputed requirement that Plaintiff allege the precise details of the agency relationship between USHealth and Owen. USHealth argues that Plaintiff has not alleged facts establishing USHealth's conduct ratifying Owen's actions. At this stage of litigation, Plaintiff is not privy to any agreements, documents, or renumeration exchanged between USHealth and Owen that could be used to establish the precise conduct by USHealth that ratified Owens actions. However, this Court could draw the reasonable inference that Owen's conduct in some way furthered the interests of USHealth and that USHealth ratified his conduct. *See* FAC, ¶ 12-13.

## VI.   PLAINTIFF REQUESTS THIS CASE BE TRANSFERRED TO THE MIDDLE DISTRICT OF FLORIDA.

As alleged in the FAC, Plaintiff believes venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b), because Owen resides in the Middle District of Florida, a substantial part of the events or omissions giving rise to the claim occurred the Middle District of Florida, and/or Defendants are subject to personal jurisdiction in the Middle District of Florida. *See* FAC, ¶ 3. Plaintiff mistakenly filed the case at bar in this venue, and not for any improper purpose. Therefore, contrary to USHealth's arguments Plaintiff will not be rewarded for any wrongful conduct if this case is transferred to the Middle District of Florida.

"'The language of [28 U.S.C.] § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction of the defendants or not.'" *Margulis v. Stryker Corporation*, 377 F.Supp.3d 1367, quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67, (1962). *Goldlawr* noted "the statute's purpose of 'removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits'" *Id*.

Plaintiff therefore respectfully requests this Court transfers this case to the Middle District of Florida.

## VII.   THIS COURT SHOULD NOT STAY THIS PROCEEDING PENDING THE SUPREME COURT'S DECISION IN *BARR v. AMERICAN ASS'N OF POLITICAL CONSULTANTS*.

*Barr v. American Ass'n of Political Consultants* concerns questions of severability and its application to First Amendment jurisprudence, and may not even result in a substantive ruling by the Supreme Court on the TCPA's constitutionality at all. *See Barr,* No. 19-631, 2020 WL 113070 (U.S. Jan. 10, 2020). The question pending before the Supreme Court is wholly unrelated to this matter. As discussed below, (1) severability is unlikely to impact this matter; (2) USHealth has

failed to meet its burden for entry of a stay; and (3) Plaintiff and the putative class members will be prejudiced by a stay. Thus, USHealth's Motion to Stay this matter should be denied.

### A.      Severability is unlikely to impact this matter.

The only way the *Barr* decision could impact this case is if the Supreme Court not only finds the government-debt exception to be unconstitutional, but then *also* decides, in contrast to its own lengthy precedent, the agreement of the Courts of Appeals, and the TCPA itself, that an exception which was created in 2015, to a 30-year old statute, cannot be severed. This is a highly unlikely result.

The Supreme Court has long said that severance is the preferred remedy when possible. *See. e.g., NFIB v. Sebelius*, 567 U.S. 519, 587 (2012) (a reviewing court "must leave the rest of the [statute] intact" if possible, when one aspect is constitutionally flawed); *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) ("partial…invalidation [of a statute] is the required course."). This is especially true when Congress has addressed severance in the statute. With respect to the TCPA, Congress has directed that, if any part of the TCPA "is held invalid…the remainder…shall not be affected." 47 U.S.C. § 608. "[W]hen Congress has explicitly provided for severance by including a severability clause in the statute[, there is] a presumption that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision." *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 686 (1987). "In such a case, unless there is strong evidence that Congress intended otherwise, the objectionable provision can be excised from the remainder of the statute." *Id*.

The Supreme Court has previously enforced § 608's severability provision to save another statute with an unconstitutional clause codified in Chapter 5 of Title 47 of the U.S. Code. *See Reno v. ACLU*, 117 S. Ct. 2329, 2350 (1997) (considering the constitutionality of 47 U.S.C. § 223

16

and holding that "we will follow § 608's guidance by leaving constitutional textual elements of the statute intact in the one place where they are, in fact, severable."). This is the exact result of each Court of Appeals to strike down the government-debt exception. *See Am. Ass'n of Political Consultants, Inc. v. FCC,* 923 F.3d 159, 170-171 (4th Cir. 2019); *Duguid v. Facebook, Inc.,* 926 F.3d 1146, 1156-57 (9th Cir. 2019). Thus, the stay is highly unlikely to resolve any pertinent issues in this matter, given the numerous issues which would have to fall USHealth's way in order to translate to a dismissal of this action. The possibility that a recent amendment to the TCPA would cause the Supreme Court to invalidate the entirety of this 30-year-old statute is so remote that it would be unjust to stay this litigation for any significant period of time.

**B.    USHealth has failed to meet its burden for entry of a stay.**

USHealth has not adequately explained how a stay is necessary when balanced against the prejudice that will be experienced by Plaintiff and the class members if a stay is imposed. Being required to defend a lawsuit does not constitute a hardship or inequity sufficient to justify a stay. *See, e.g., Locyear v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); and, *Sunbeam Prods v. Hamilton Beach Brands, Inc.*, No. 09-cv-791, 2010 U.S. Dist. LEXIS 45654, at *14 (E.D. Va. May 7, 2010) (citation omitted) ("[t]he mere fact that this action will go forward, and that litigating it will cost money, is an insufficient reason to warrant a stay.").

Here, USHealth's hardship argument does not satisfy its burden and "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Furthermore, the proponent "must make out a clear case of hardship or inequity in being required to move forward." *Landis v. Am. Co.,* 299 U.S. 248, 255 (1936). USHealth's Motion should be

denied since it has failed to meet its burden. Granting the Motion would force Plaintiff and the putative class members to sit idly by for an indeterminate amount of time while the Supreme Court considers an issue unlikely to impact this litigation.

**C.      Plaintiff and the class will be prejudiced by a stay.**

USHealth argues that any potential prejudice to Plaintiff by a stay pending the Supreme Court's rulings is minimal, but that is simply not true. USHealth is alleged to have engaged in widespread telemarketing practices that are illegal under the TCPA, whereby it solicits consumers using intrusive and invasive automated robo-dialing technology, without the consumers' consent. The primary evidence that will lead to a conclusion of this matter via a Rule 23 analysis is likely to be in the hands of third-party lead vendors. If this theory proves true, then allowing more time could absolutely harm Plaintiff and the putative class members. It is reasonable for Plaintiff to be concerned about this, as evidence of calls placed in cases of this nature is not retained indefinitely and can be easily destroyed.

Plaintiff desires the opportunity to ascertain the identity of any third parties holding those records, serve them with subpoenas, send them spoliation letters, and conduct a web traffic analysis of any websites associated with their lead generation for USHealth during the pertinent time periods. If the records disappear then the truth cannot be uncovered, and USHealth no doubt will claim that Plaintiff is advancing conspiracy theories. This will also make the case harder to resolve on a class-wide basis, because the parties will be guessing about the amount of potential exposure, i.e. the number of manufactured leads that led to the calls at issue.

## VIII. SHOULD THE COURT GRANT USHEALTH'S MOTION TO DISMISS, PLAINTIFF SHOULD BE GRANTED AN OPPORTUNITY TO AMEND HIS COMPLAINT.

Fed. R. Civ. P. 15(a)(2) states that "[t]he Court should freely give leave [to amend a pleading] when justice so requires." When determining whether to grant leave to amend the court should consider factors such as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Seiger by & through Seiger v. Philipp*, 735 F.App'x 635, 637 (11th Cir. 2018), quoting *Equity Lifestyle Properties, Inc. v. Fla. Mowing and Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009). *See also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Should the Court feel that certain necessary allegations are lacking from Plaintiff's FAC and therefore grant USHealth's Motion, Plaintiff requests the Court grant Plaintiff leave to file a Second Amended Complaint to correct any such deficiencies. Justice would require (as stated in Fed. R. Civ. P. 15(a)(2)) that Plaintiff be granted leave to file a Second Amended Complaint so that Defendant's alleged violations of the TCPA not be allowed to go unchecked.

## IX. CONCLUSION

For the reasons explained above, Plaintiff respectfully requests the Court deny USHealth's Motion to Dismiss Plaintiff's First Amended Complaint or, Alternatively, to Stay Proceedings with prejudice, order USHealth to file an Answer to Plaintiff's First Amended Complaint, transfer this case to the Middle District of Florida for further proceedings, and grant such other relief as the Court deems appropriate under the circumstances.

Respectfully Submitted this 12th day of June, 2020.

Respectfully submitted,

By:  */s/ Scott M. Wellikoff*
Scott M. Wellikoff
Florida Bar #0020341
ADLER WELLIKOFF, PLLC
1300 N. Federal Highway,
Suite 107
Boca Raton, FL 33432
Email: swellikoff@adwellgroup.com
Telephone: (561) 508-9591
Facsimile: (561) 508-9591

/s/ David B. Levin
David B, Levin (Pro Hac Vice Application
Forthcoming)
Illinois Attorney No. 6212141
Law Offices of Todd M. Friedman, P.C
333 Skokie Blvd., Suite 103
Northbrook, IL 60062
Phone: (224) 218-0882
Fax: (866) 633-0228
dlevin@toddflaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 12, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.

*/s/ Scott M. Wellikoff*

Scott M. Wellikoff, Esq.